UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARFIELD LAWSON,

Plaintiff,

Case No. 1:23-cv-776

v.

Honorable Paul L. Maloney

JOHN DAVIDS et al.,

Defendants.
____________________________/

**OPINION**

This is a civil rights action brought by Plaintiff Garfield Lawson under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. This matter is now before the Court on a motion for summary judgment (ECF No. 59) filed by Defendants DeBoer, Kinney, Mitchell, and Moore. For the reasons set forth below, the Court will grant the motion for summary judgment.

**Discussion**

## I. Factual Allegations

Plaintiff is serving multiple life sentences in the custody of the Michigan Department of Corrections (MDOC) following his convictions of multiple offenses, including assault with intent to commit murder and armed robbery, in two criminal prosecutions in the Saginaw County Circuit Court. *See* MDOC Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/otis2/search (enter First Name "Garfield," Last Name "Lawson,"

select Search, select Offender Number 287931) (last visited Sept. 22, 2026).[1] Plaintiff is presently housed at the Ionia Correctional Facility (ICF) in Ionia, Michigan.

By way of preliminary screening, as required by the Prison Litigation Reform Act, and a prior motion for summary judgment the Court has dismissed all of Plaintiff's claims against fourteen of the twenty defendants and many of the claims against the remaining six defendants. At issue in the present motion are the remaining claims Plaintiff has raised against the following ICF personnel: Classification Director Timothy Moore and Corrections Officers Beth DeBoer, Kyle Mitchell, and Tyler Kinney.[2]

**A. Defendant DeBoer**

Plaintiff alleges that, on July 6, 2020, Defendant DeBoer arranged for Plaintiff to be let out of his cell for the purpose of meeting her in the officer's lounge. (Compl., ECF No. 1, PageID.5.) Plaintiff states that he stood in the "officer's office, out of view of the security camera and the officer inside of the officer's station." (*Id.*) Defendant DeBoer "leaned forward in her chair and reached down into Plaintiff's pants." (*Id.*) She attempted to stroke Plaintiff's genitals. (*Id.*) Plaintiff stepped back from Defendant DeBoer, "conveying that she had the wrong idea." (*Id.*) Plaintiff describes the situation a little bit differently in his declaration: "Arriving at the officers'

---

[1] This Court takes judicial notice of the information provided by a search of the MDOC's OTIS website with regard to Plaintiff. *See, e.g., United States v. Alexander*, 543 F.3d 819, 824 (6th Cir. 2008); *Carpenter v. Mich. Dep't of Corr. Time Computation Unit*, No. 1:13-cv-313, 2013 WL 1947249, at *1 n.1 (W.D. Mich. May 9, 2013); *Ward v. Wolfenbarger*, 323 F. Supp. 2d 818, 821–22 n.3 (E.D. Mich. 2004).

[2] This matter is also before the Court on the motion of Defendants DeBoer, Moore, Mitchell, and Kinney to strike Plaintiff's surreply to Plaintiff's motion for summary judgment. (ECF No. 71.) Western District of Michigan Local Civil Rule 7.2(c) provides the standard briefing schedule for dispositive motions. The rule permits a motion with supporting brief, a response, and a reply. W.D.Mich. LCivR 7.2(c). The Court may permit or require further briefing. Id. The Court neither permitted nor required further briefing here. Accordingly, the Court will grant Defendants' motion to strike Plaintiff's surreply brief.

lounge station, I found it strange that all the lights were out. Once inside the office, Defendant DeBoer attempted to fondle my penis, but I stopped her . . . .” (Decl., ECF No. 63, PageID.675.)

Defendant DeBoer’s version of the events is different than Plaintiff’s:

> While out of his cell, Plaintiff walked to the unit office and remained standing for a short period of time at the doorway. While the Plaintiff did so, I was inside the office. Plaintiff and I briefly discussed a maintenance request regarding his toilet. We did not discuss other prisoners being assaulted. No sexual discussion or activity occurred. I did not touch Plaintiff or attempt to touch him in any manner, much less in a manner that involved his penis. I have never engaged or attempted to engage in sexual activity with Plaintiff.

(DeBoer Aff., ECF No. 60-6, PageID.596.) The incident was recorded by a surveillance video camera. Defendant DeBoer has provided the video with her affidavit.

The recording shows Defendant DeBoer entering the lounge area and then stepping into the office. After she steps into the office, she is out of view of the camera. A few seconds later, Plaintiff enters the lounge area. Defendant DeBoer then exits the office, entering the lounge area. She and Plaintiff speak for a few seconds and then another prisoner enters the lounge area. Plaintiff steps outside of the lounge area into the hallway holding the door open. It appears that he and Defendant DeBoer continue to converse. The other prisoner leaves the lounge area. The conversation between Plaintiff and Defendant DeBoer continues for a few more seconds. Plaintiff closes the door and begins to walk away. Defendant DeBoer returns to the office and goes out of view. Plaintiff then returns to the lounge area. He stands in the doorway into the office. It appears he is speaking to Defendant DeBoer. The conversation continues for a few seconds; Plaintiff is never out of view. Then he walks out of the lounge area again back into the hallway. Nothing in the video suggests that Defendant DeBoer touched or attempted to touch Plaintiff.

**B. Defendant Mitchell**

Plaintiff alleges that, on July 20, 2020, he noticed Corrections Officer Miginity from unit 4 talking to Defendants Doesburg and Mitchell on the stairs that led to Unit 5’s

recreational yard. (Compl., ECF No. 1, PageID.8.) Based on the way the officers stared at Plaintiff, he believed they were going to try to set him up then. (*Id.*) At around 5:00 p.m., Plaintiff hollered down to Defendant Mitchell who was assigned to A-wing in unit 5, where Plaintiff's cell was located, asking for an opportunity to shower. (*Id.*) Defendant Mitchell refused to answer the request. (*Id.*) Nonetheless, a couple of minutes later, Plaintiff's cell door opened. (*Id.*) Plaintiff and one other prisoner made their way to the shower. (*Id.*, PageID.9.)

When Plaintiff stepped into the shower, he noticed that Defendant Doesburg had left his assigned wing and was heading up the stairs toward Plaintiff's cell. (*Id.*) Plaintiff then saw Defendant Mitchell carrying a long-handled mirror up the stairs toward Plaintiff's cell. (*Id.*) About two minutes later, the water was turned off (*Id.*) Defendant Doesburg told Plaintiff that he and Sergeant Bennett needed to talk to Plaintiff in the day room. (*Id.*)

Defendant Doesburg and an unknown female officer were in the day room. (*Id.*) Doesburg asked Plaintiff, "where was the only spot in the cell he didn't look behind when he moved from unit 4 to unit 5." (*Id.*) Plaintiff told Doesburg that Plaintiff had already heard from Inspector Barber about the plan hatched by Defendants Doesburg, DeBoer, and Perry to set Plaintiff up. (*Id.*) Doesburg handcuffed Plaintiff. (*Id.*)

Plaintiff asked Sergeant Bennett to contact Inspector Barber about the setup. (*Id.*) Sergeant Bennett said he could contact Barber once Plaintiff was escorted to segregation. (*Id.*) Even though the resulting charge of possession of a weapon was dismissed, Plaintiff remained in administrative segregation for five months. (*Id.*, PageID.10–11.) Plaintiff learned that Defendants Perry and Doesburg were placed on administrative leave and charged in criminal court. (*Id.*, PageID.11.)

Defendant Mitchell has provided an affidavit along with a surveillance video camera recording. Defendant Mitchell avers that he was not aware of and played no part in the "planting" of a weapon in Plaintiff's cell. Defendant Mitchell acknowledges that he, at Defendant Doesburg's request, grabbed a long-handled mirror and brought it to Defendant Doesburg. In Defendant Mitchell's statement submitted in support of the resulting misconduct ticket, he stated:

> At 1606 hours, Officer Doesburg was searching cell 5-21. I was seated on the A-Wing vestibule area when Officer Doesburg asked me to bring the extended mirror. I entered cell 5-21 and observed Officer Doesburg search behind the footlocker. Officer Doesburg utilized the extendable mirror and located a weapon. The weapon was a piece of orange plastic sharpened to a point.

(Memorandum, ECF No. 60-9, PageID.603.)

Plaintiff's complaint allegations regarding Defendant Mitchell do not conflict with Defendant Mitchell's statements regarding the incident, with two exceptions: first, Plaintiff "believed" that Defendant Mitchell might have been intending to set Plaintiff up (Compl., ECF No. 1, PageID.8, ¶ 83); and second, Plaintiff describes Defendant Mitchell's statement as "fabricated" (*Id.*, PageID.10, ¶ 110).

### C. Defendant Moore

Plaintiff's remaining claim against Defendant Moore is based on the following allegations:

> 177. On or about July 29, 2021 at or around 11:50 p.m., after walking through metal detectors at the educational building with 2 white inmates, Dietrich and Kierzak, Plaintiff was ordered by Defendant Tim Moore to give him a shake down.
>
> 178. Complying with the order, Mr. Moore begun roughly pattying Plaintiff down.
>
> 179. Then after finding a[n] address book in Plaintiff back pocket, Mr. Moore threw the book on the desk as he continued his aggressive pat down.
>
> 180. While Mr. Moore shook the Plaintiff down, the Plaintiff turned to look back over his shoulder asking Mr. Moore what was his problem.

> 181. Defendant Tim Moore replied to Plaintiff, write your fucking grievances now. You're not so fucking tough now, he continued to taunt as he snatched Plaintiff's pants down to his knees.
>
> 182. In disbelief, as the officer continued to challenge Plaintiff with the strong scent of alcohol on his breath, realizing that Mr. Moore was drunk, with his hands held up in the air, to[o] scared to reach to pull up his pants, the Plaintiff shuffled over to the officer's desk.
>
> 183. Begging C/O Mahalic to please get Mr. Moore, Plaintiff notice[d] that a crowd had gathered around. Unfortunately no one came to his aid as Mr. Moore continued to taunt and challenge Plaintiff to a fight.
>
> 184. Asking permission for Defendant Mahalic to pull up his pants, the Plaintiff tried to walk away from Mr. Moore, unfortunately, he stalked behind taunting and challenging him to a fight.
>
> 185. With Defendant Mahalic whom never left h[i]s chair, refusing to intervene, Plaintiff asked for permission t[o] return to Unit 5.
>
> 186. After permission was granted, with Mr. Moore on his heels, the Plaintiff hurried out the door.

(Compl., ECF No. 1, PageID.15–16.)

Defendant Moore has submitted an affidavit in support of Defendants' motion for summary judgment. He states:

> 1. In 2021, I was employed by the Michigan Department of Corrections ("MDOC") as a Classification Director at the Ionia Correctional Facility ("ICF") in Ionia, Michigan.
>
> 2. On July 29, 2021, I was on duty and assigned to assist Corrections Officer Mihalic with monitoring and screening prisoners entering the school building at ICF. Among other facilities, the school building contains the law library. The purpose of monitoring and screening prisoners going from their housing unit to the law library and other facilities in the school building is to prevent prisoners from transporting contraband from one location to another, to protect the safety and security of staff and other inmates from prisoners with weapons, and to ensure prisoners are only in approved areas within the facility. The safety and security of staff and other inmates is a significant concern with Level V prisoners because, compared to other general population prisoners, Level V prisoners present the highest risk to institutional safety and security.
>
> 3. On July 29, 2021, Garfield Lawson #287931 ("Plaintiff"), a Level V prisoner, arrived to my screening location from his housing unit. I requested that he empty his pockets to submit to being searched. By context, Policy Directive 04.04.110,

> paragraph T, states that prisoners are subject to pat-down search at any time by any employee.
>
> 4. In response to my order, Plaintiff placed multiple personal items on a table. I then conducted a policy-compliant pat-down search. This entailed checking his torso, mid-section, and legs. In the middle of the pat-down search, as I began to check Plaintiffs left leg, I discovered Plaintiff had not removed an item of personal property that was in his back pocket. I retrieved this item from his pocket and placed it on the table with Plaintiffs other property.
>
> 5. I then resumed the pat-down search of Plaintiffs left leg. From there, I patted-down Plaintiffs right leg, an area that I had not yet searched. While doing so, I accidentally pulled Plaintiffs right pant leg a few inches below his waistline. This did not expose his bare skin. It resulted in a small portion of his boxer shorts being visible. Because Plaintiffs shirt was long, his shirt immediately covered his waistline and extended low enough that only a small portion of his boxer shorts were visible.
>
> 6. I informed Plaintiff that what happened was an accident. In response, Plaintiff voluntarily chose to lift his shirt up to expose his boxer shorts and stomach to other prisoners. He then walked around the room for others to see. In doing so, Plaintiff exposed his boxer shorts and mid-section far more than the minor degree to which his boxer shorts were momentarily exposed during the pat-down search.
>
> 7. I did not pull Plaintiffs pants down to retaliate against him. I did not intend any harm to Plaintiff. I did not intend to pull down Plaintiffs pants at all. The only individual who intentionally exposed Plaintiffs boxer shorts and mid-section to anyone was Plaintiff.

(Moore Aff., ECF 60-10.)

Defendant Moore also submitted a surveillance video recording of the incident. (ECF No. 60-11.) The video tracks Defendant Moore's description of the incident. It does not support Plaintiff's version.

### D. Defendant Kinney

Plaintiff alleges that he filed grievances against Defendant Kinney during August of 2021. Plaintiff claims that Defendant Kinney wrote a false misconduct report against Plaintiff a couple weeks after Plaintiff filed the grievances. Plaintiff contends that Defendant Kinney wrote the misconduct report in retaliation for Plaintiff's filing of grievances against Kinney.

Defendant Kinney has submitted an affidavit wherein he states:

> 1. Throughout 2021, I was employed by the Michigan Department of Corrections ("MDOC") as a Corrections Officer at the Ionia Correctional Facility ("ICF") in Ionia, Michigan.
>
> 2. On August 27, 2021, I issued a threatening behavior misconduct report to prisoner Garfield Lawson #287931 ("Plaintiff") because he threatened to assault me while I was on-duty and assigned to his housing unit. The misconduct report accurately reflects the events described therein, including the threatening behavior of Plaintiff that culminated in him stating "you're going to leave me alone because I run this Unit and if you don't I'll have to beat your ass." I prepared the report when the details of the encounter were fresh in my mind, and I truthfully and accurately stated those details in the misconduct report.
>
> 3. By way of context, at the time of the incident, Plaintiff was out of his cell because he was a unit prisoner representative. In this capacity, Plaintiff was permitted to walk through the unit to speak cell-side with other prisoners. Plaintiff's position as a prisoner representative did not entitle him to threaten to assault me or any other staff member.
>
> 4. I did not issue the misconduct report because Plaintiff raised grievances against me. I did not retaliate against Plaintiff. I issued the misconduct report because Plaintiff engaged in threatening behavior by threatening to "beat [my] ass," and I was aware at the time that policy mandated that I issue a misconduct report. Specifically, as described in MDOC Policy 03.03.105 and 03.03.105A, "threatening behavior" constitutes a Class I major misconduct and a corrections officer who witnesses a Class I misconduct is required to issue a misconduct report. In issuing Plaintiff a misconduct report for threatening behavior, I simply followed the mandate contained in PD 03.03.105, paragraph D.

(Kinney Aff., ECF No. 60-14.)

On September 3, 2021, Administrative Law Judge S. Morris conducted a hearing on the threatening behavior misconduct charge. (Hr'g Rep., ECF No. 30-5, PageID.272–273.) The ALJ found as follows:

> Pursuant to PD 03.03.105, threatening behavior is words, actions or other behavior which expresses an intent to injure or physically abuse another person. This Administrative Law Judge finds the reporting staff member's statement to be specific and supported by the statements from officer Randall. ALJ finds that the prisoner did state "you're gonna leave me alone because I run this unit and if you don't, I'll have to beat your ass" to the reporting staff member. These words express an intent to injure or physically abuse a staff member. This was witnessed by officer Randall, who writes a witness statement that supports the misconduct report. Video

> does show both officer Randall and Kinney present with prisoner Lawson. Although the prisoner witnesses seem to be talking about different parts of the situation, one prisoner witness seems to be discussing the incident which is the subject of the misconduct report. Prisoners Long and Taggert appear to be discussing a previous incident before Lawson came out for block rep duties. Prisoner Greer appears to be discussing after the incident occurred (when Lawson was told he was going to the hole). Prisoner Simmons, however, indicates that he did hear Lawson say he would kick their ass when he passed by his cell on the way to his cell. This would appear to support the misconduct report. Video does not contain audio, but does show conversation between Lawson and Kinney. I find the report supported by statements and video. I find the prisoner guilty of (012).

(*Id.*)

## II. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is genuinely disputed when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249 (citing *First Nat'l Bank of Ariz. v. City Serv. Co.*, 391 U.S. 253, 288–89 (1961)). "Putting all of that together, Rule 56 asks 'whether [the evidence is so one-sided that one party must prevail as a matter of law.'" *DeVooght v. City of Warren, Mich.*, 157 F.4th 893, 899 (6th Cir. 2025) (quoting *Anderson*, 477 U.S. at 252).

Summary judgment is not an opportunity for the Court to resolve factual disputes. *Id*. The Court "must shy away from weighing the evidence and instead view all the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in their favor." *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 410 (6th Cir. 2021). Nonetheless, a court need not accept bare legal conclusions couched as factual allegations or unwarranted factual inferences in resolving a motion for summary judgment. *See, e.g., Yanovich v. Zimmer Austin, Inc.*, 255 F. App'x 957, 969 (6th Cir. 2007) ("Even under the generous standard of review for a grant of

summary judgment, we do not 'accept as true legal conclusions or unwarranted factual inferences.'").

An opponent of a motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 248. The non-moving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Id.*, at 257. Federal Rule of Civil Procedure 56(c) identifies the types of affirmative evidence contemplated: "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Defendants have provided misconduct records, affidavits, and video in support of their motions. Plaintiff has provided a verified declaration in response. (ECF No. 63.)

Even when the Court considers Plaintiff's "verified" statements, the Court need not accept every "verified" statement as true. Federal Rule of Civil Procedure 56 identifies specific requirements for affidavits or declarations used to support or oppose a motion for summary judgment: they "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

With regard to the "personal knowledge" requirement, the Sixth Circuit has explained that "[p]ersonal knowledge 'is gained through firsthand observation or experience, as distinguished from a belief based on what someone else has said.'" *Nationwide Recovery, Inc. v. City of Detroit, Mich.*, 163 F.4th 977, 987 (6th Cir. 2026) (quoting *Personal Knowledge*, Black's Law Dictionary (12th ed. 2024)). Moreover, to the extent Plaintiff's "verified" statements reflect

only that which he heard from others, it is not properly before the Court because it is inadmissible hearsay. *See, e.g., Blount v. Stanley Engineering Fastening*, 55 F.4th 504, 516 (6th Cir. 2022) (concluding that the district court properly excluded an affidavit containing "extensive hearsay"); *Jacklyn v. Schering Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir.1999) (holding that the court may not consider hearsay on a motion for summary judgment).

Some statements in Plaintiff's verified declaration do not satisfy the requirements of Rule 56(c)(4), including the following:

> 15. On July 20, 2020, I noticed defendant Doesberg and Mitchell talking and staring at me while on the phone with my brother. Believing they were plotting to set me up, I shared this belief with prisoners, Lee, Cammon, and Delany as we exited the recreational yard. . . .
>
> 16. Defendant Mitchell did not intervene to prevent Defendant Doesberg from planting the weapon in my cell. Defendant Mitchell later statement supports that he was in deed aware of defendant's Doesberg plan to plant a weapon in my cell.

(ECF No. 63, PageID.675–676.) Plaintiff's belief regarding Mitchell is not evidence. There is nothing in Plaintiff's declaration that shows that he is competent to testify regarding what Mitchell did or did not do on the unit while Plaintiff was in the shower. And, Plaintiff's interpretation of Defendant Mitchell's unidentified "later statement" is not evidence.

It is also important to note that "[e]ven if Rule 56 commands judges to view the facts in the light most favorable to the nonmoving party, it certainly doesn't require [the court] to put blinders on." *DeVooght*, 157 F.4th at 900. It is clear that Plaintiff's version of his encounters with Defendant DeBoer, Defendant Moore, and Defendant Kinney conflict with the Defendants' sworn accounts, but that does not end the inquiry.

> When . . . the parties tell conflicting stories, "one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). This applies not only when there is videotape evidence, but whenever the nonmoving party's version is "so blatantly

> contradicted by objective evidence in the record that it fails to create a genuine issue of material fact for trial." *Coble*, 634 F.3d at 869.

*Booher ex rel. T.W. v. Montavon*, 555 F. App'x 479, 484 (6th Cir. 2014) (parallel citation and footnote omitted). Many of Plaintiff's statements are blatantly contradicted by videotape evidence. In considering a motion for summary judgment, the Court may not rely on a party's version of the facts that is "utterly discredited" by the video evidence "such that no reasonable jury could believe him." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Rather, the Court should view the facts "in the light depicted by the videotape." *Id*. at 380–81.

"[T]he standard that a movant must meet to obtain summary judgment depends on who will bear the burden of proof at trial." *Trs. of Iron Workers Defined Contribution Pension Fund v. Next Century Rebar, LLC*, 115 F.4th 480, 488 (6th Cir. 2024) (alteration in original) (quoting *Pineda v. Hamilton Cnty.*, 977 F.3d 483, 491 (6th Cir. 2020)). "[W]hen the moving party bears the burden of proof [at trial], their initial summary judgment burden is higher in that [they] must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Id*. at 489 (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001) (internal quotation marks omitted). When the moving party does not bear the burden of proof at trial, they may meet their initial burden at summary judgment by "either: (1) submitting 'affirmative evidence that negates an essential element of the nonmoving party's claim'; or (2) demonstrating 'to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.'" *Kava v. Peters*, 450 F. App'x 470, 473 (6th Cir. 2011) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)).The nonmovant must then present "sufficient evidence from which a jury could reasonably find in [their] favor." *Davis v. Sig Sauer, Inc.*, 126 F.4th 1213, 1230 (6th Cir. 2025) (cleaned up).

Plaintiff—the non-moving party—bears the burden of proof at trial. The moving parties, Defendants DeBoer, Mitchell, Moore, and Kinney, must either demonstrate that Plaintiff cannot present evidence to show an essential element of his claim or present evidence that negates an essential element of Plaintiff's claim. As set forth below, the Court finds that Defendants have made the necessary showing.

## III. Plaintiff's § 1983 Claims

Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself; thus, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff contends that Defendant DeBoer's attempt to fondle Plaintiff's penis and that Defendant Moore's pulling down of Plaintiff's pants during the shakedown violated Plaintiff's Eighth Amendment rights. (Plaintiff's Response Br., ECF No. 62, PageID.668–669.) Plaintiff claims that Defendant Mitchell's role in the weapon misconduct ticket and Defendant Kinney's role in the threatening behavior misconduct ticket were retaliatory for Plaintiff's exercise of his First Amendment rights and, therefore, violated Plaintiff's First Amendment rights. (*Id*.)

### A. Eighth Amendment Violation

The Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id*. However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v.*

*McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

"Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment[;] [t]his is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty*., 915 F.3d 1087, 1095 (6th Cir. 2019) (citations omitted). The Eighth Amendment may be violated "even in the absence of physical touching by a guard." *Id*. at 1097. Nonetheless, "'isolated, brief, and not severe' instances of sexual harassment do not give rise to Eighth Amendment violations." *See id*. at 1095–96 (quoting *Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005), *abrogated on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018)). That may be so even if sexual touching is involved. *See, e.g., Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320–21 (6th Cir. 2012) (finding that two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson*, 158 F. App'x at 661–62 (6th Cir. 2005) (concluding that correctional officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (holding that male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment).

A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering such a claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

**1. Defendant DeBoer**

Plaintiff's version of the events is utterly discredited by the surveillance video recording. No reasonable jury could believe Plaintiff viewing the facts in the light depicted by the videotape, there are no genuine issues of material fact, and Defendant DeBoer is entitled to judgment as a matter of law.

**2. Defendant Moore**

Plaintiff's version of the events is utterly discredited by the surveillance video recording. No reasonable jury could believe Plaintiff viewing the facts in the light depicted by the videotape, there are no genuine issues of material fact, and Defendant Moore is entitled to judgment as a matter of law.

Moreover, the video reveals the shakedown to be, at most, an "isolated, brief, and not severe" instance of harassment that was not objectively harmful enough to rise to the level of an Eighth Amendment violation. For that reason, also, Defendant Moore is entitled to judgment as a matter of law.

**B. First Amendment Retaliation**

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a

person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id*. Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

**1. Defendant Mitchell**

An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben*, 887 F.3d at 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by threatening to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741). Plaintiff describes many instances where he filed grievances or voiced complaints. It appears that he contends that Defendant Mitchell was motivated by complaints and grievances Plaintiff filed regarding Defendant DeBoer.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is

whether the defendants' conduct is "capable of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

The Sixth Circuit has concluded that even seven days' loss of privileges—which includes loss of the rights to use the exercise facilities, to attend group meetings, to use the telephone, to have visitors, to access the general library, and to access the activity room—amounts to adverse action. *Maben*, 887 F.3d at 266–67 (quoting *Hill v. Lapin*, 630 F3d 468, 474 (6th Cir. 2010) (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse")). Certainly, the potential loss of privileges and temporary placement in segregation that followed the weapon misconduct report, and Mitchell's statement in support of it, could be considered adverse action.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) ("[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims") (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

Plaintiff merely alleges the ultimate fact of retaliation. He alleges no *facts* from which to reasonably infer that Defendant Mitchell's statement in support of the misconduct report was motivated by any of Plaintiff's protected conduct. Plaintiff offers only (1) his "belief" that Defendant Mitchell was setting Plaintiff up based on the way that Defendant Mitchell looked at Plaintiff earlier in the day and (2) Plaintiff's claim that Defendant Mitchell's statement was "fabricated."

Defendant Mitchell has provided a verified affidavit stating that he was in no way involved in the planting of the weapon in Plaintiff's cell. Plaintiff fails to present any affirmative evidence to contradict Defendant Mitchell's testimony. Plaintiff's "belief" based on the way Mitchell looked at Plaintiff is not evidence. Moreover, based on the video recording and Defendant Mitchell's verified affidavit, his one-paragraph statement submitted as part of the misconduct proceedings was neither false nor fabricated. Because Plaintiff has failed to present any affirmative evidence to support his speculation regarding Defendant Mitchell's motivation, the Court concludes there are no genuine issues of material fact regarding this claim and Defendant Mitchell is entitled to judgment as a matter of law.

**2. Defendant Kinney**

Plaintiff contends that, on August 27, 2021, Defendant Kinney wrote a false threatening behavior misconduct against Plaintiff in retaliation for: (1) Plaintiff, on July 1, 2021, telling an internal affairs officer that Defendant Kinney had warned Plaintiff about the potential plot to frame Plaintiff for possession of a weapon; and/or (2) Plaintiff, on August 15, 2021, wrote a grievance against Defendant Kinney because, on August 8, 2021, Defendant Kinney "with plenty of room to get around Plaintiff, purposely brushed his arm against Plaintiff's back" and "came up behind Plaintiff mockingly." (Compl., ECF No. 1, PageID.16–17.) Plaintiff was found guilty of threatening behavior. (Hr'g Rep., ECF No. 30-5, PageID.272–273.)

Plaintiff's report to the internal affairs officer and his grievances filed against Defendant Kinney are appropriately considered protected activity. And the potential consequences of a Class I misconduct report are plainly adverse action. Once again, however, Plaintiff has failed to provide affirmative evidence establishing a causal connection between the protected conduct and the adverse action.

In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Plaintiff merely alleges the ultimate fact of retaliation. He alleges no facts from which to reasonably infer that Defendant Kinney's misconduct report was motivated by any of Plaintiff's protected conduct. He merely concludes that because he identified Defendant Kinney in the statement to an internal affairs officer several weeks before the misconduct report and filed grievances against Defendant Kinney a couple of weeks before the misconduct report, that the report must have been motivated by his statements.

But, if it is temporal proximity that explains motivation, the motivating conduct here must have been Plaintiff's threatening statements. That is the conduct by Plaintiff that directly resulted in the misconduct report[3] and, apparently, the two events occurred one after the other.

---

[3] Plaintiff's threat, of course, is not protected conduct. If Plaintiff threatened to "beat [Defendant Kinney's] ass" the statement would fit within the definition of "threatening behavior" under the MDOC Policy Directive governing prisoner misconduct. "The First Amendment does not protect violence." *NAACP v. Claiborne Hardware Co*., 458 U.S. 886, 916 (1982). As the Sixth Circuit explained in *Thaddeus–X, "*if a prisoner violates a legitimate prison regulation, he is not engaged

Plaintiff offers an alternative "proof of motive" by claiming that the misconduct report is false. If, in fact, Plaintiff did not make the threatening statement, it would open the door to exploring whether prior conduct—like the internal affairs interview or the grievance—motivated the report.

But Plaintiff's claim that he did not make the threatening statement is precluded by the ALJ's factual determination that Plaintiff made the statement. The Sixth Circuit has instructed courts to apply a four-factor test to determine when factfinding done by a state agency should be given preclusive effect. *Peterson v. Johnson*, 714 F.3d 905, 912 (6th Cir. 2013) (citing *Univ. of Tenn. v. Elliot*, 478 U.S. 788, 799 (1986)). First, the hearing officer must have acted "in a judicial capacity." *Id*. (quoting *Elliot*, 478 U.S. at 799). Second, the hearing officer must have "resolve[d] disputed issues of fact" that were properly raised before her. *Id*. Third, the party against whom preclusion is sought must "have had an adequate opportunity to litigate" the issue before the hearing officer. *Id*. And fourth, if the first three factors are met, "federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in" Michigan courts. *Id*. Michigan state law asks whether the prisoner "had a 'full and fair opportunity' to litigate" the issue in the prison disciplinary hearing. *Nash v. Bryce*, 157 F.4th 436, 444 (6th Cir. 2025) (quoting *Peterson*, 714 F.3d at 913).

The Sixth Circuit has held that major misconduct hearings in Michigan prisons meet the first three *Elliot* factors. *See Peterson*, 714 F.3d at 912-13; *Roberson v. Torres*, 770 F.3d 398, 403-04 (6th Cir. 2014); *Nash*, 157 F.4th at 445. As to the first factor, hearing officers act in a judicial capacity because they consider each party's "version of the facts at a formal hearing and

---

in 'protected conduct,' and cannot proceed beyond step one" of the three-step retaliation analysis. *Thaddeus-X*, 175 F.3d at 395; *see Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (holding that insolence is not protected conduct for First Amendment purposes).

issue a written final decision" subject to appeal. *Peterson*, 714 F.3d at 912. The second factor is also met. Here, the hearing officer resolved a disputed fact properly before her when she rejected Plaintiff's account and determined he engaged in threatening behavior towards Defendant Kinney. (Hr'g Rep., ECF No. 30-5, PageID.272–273.) So, too, is the third factor. MDOC major misconduct hearings are governed by a "plethora of statutory protections" that provided Plaintiff an adequate opportunity to litigate whether he threatened Defendant Kinney. *Peterson*, 714 F.3d at 912–13.

The Court now turns to the fourth *Elliot* prong. Under Michigan law, a court considering whether to give preclusive effect to another tribunal's factual determination must ask (1) "whether a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment"; (2) "whether 'the parties had a full and fair opportunity to litigate the issue'" before the agency, *Nash*, 157 F.4th at 445 (quoting *Peterson*, 714 F.3d at 914); and (3) whether there is "mutuality of estoppel." *Peterson*, 714 F.3d at 914. To be "actually litigated," the "precise[ ]" fact in issue must have been "put into issue by the complaint, submitted to the trier of fact, and determined" by the same. *Id*. On the second prong, Michigan courts employ a multi-factor test that "ultimately rests on the court's sense of justice and equity." *Id*. at 914–15 (quoting *Monat v. State Farm Ins. Co.*, 677 N.W.2d 843, 845 n.2 (Mich. 2004)). Michigan courts make an additional inquiry when parties are seeking to preclude an issue decided by an administrative tribunal. First, they ask whether "the administrative decision was adjudicatory in nature; second, whether "there was a right to appeal from the decision; and third, whether "the legislature intended to make the decision final absent an appeal." *Id*. at 914 (citing *Nummer v. Treasury Dep't*, 533 N.W.2d 250, 253 (Mich. 1995)). For the following reasons, preclusion is merited here.

First, the precise fact in issue was resolved below. The issue of whether Plaintiff engaged in threatening behavior was "put into issue by the [misconduct report], submitted to the

[hearing officer], and determined" by the hearing officer. *Peterson*, 714 F.3d at 914. The principal factual issue at the hearing was whether Plaintiff engaged in threatening behavior toward Defendant Kinney.

Under MDOC policy, threatening behavior is "[w]ords, actions, or other behavior which expresses an intent to injure or physically abuse another person." (See MDOC Policy Directive 03.03.105 Attachment A, ECF No. 60-15, PageID.645.) The hearing officer found that Plaintiff made the statement in question and that the statement expressed an intent to injure or physically abuse Defendant Kinney. (Hr'g Rep., ECF No. 30-5, PageID.272.) Thus, the precise factual issue of whether Plaintiff made the threatening statement to Defendant Kinney was resolved by the hearing officer.

Second, Plaintiff had a full and fair opportunity to litigate whether he made the statement to Defendant Ward. And third, because the same parties who litigated the issue in the hearing are the same parties to this action, there is mutuality of estoppel. With the first three state law factors satisfied, the Court turns to the agency-specific factors applied by Michigan courts.

All three factors lead to the conclusion that the ALJ's factual finding preclude Plaintiff from contending that he did not make the statement. First, that the misconduct hearing "was adjudicatory in nature" has already been established. *Peterson*, 714 F.3d at 914. Second, plaintiff had a right to appeal. See Mich. Comp. Laws § 791.255(2). And third, the Michigan legislature intended to make MDOC hearing officer's decisions in major misconduct hearings "final in the absence of appeal." *Peterson*, 714 F.3d at 917. Therefore, the Court concludes that Michigan courts would grant preclusive effect to the hearing officer's finding that Plaintiff made the threatening statement to Defendant Kinney.

The only possible foundations Plaintiff offers to support his claim that the misconduct report was motivated by his protected conduct are temporal proximity or the falseness of the report. But there is no meaningful temporal proximity between Plaintiff's complaints and the August 27, 2021, misconduct report and Plaintiff is precluded from relying on the alleged falsity of the report. Put simply, under the circumstances here, no reasonable jury could find that Defendant Kinney issued the misconduct ticket due to Plaintiff's alleged protected conduct. The Court, therefore, concludes that Defendant Kinney has shown that he would have taken the same action, i.e., written the misconduct ticket against Plaintiff, in the absence of the protected activity. Plaintiff has offered nothing to overcome this conclusion.

Plaintiff has failed to demonstrate that there is a genuine issue of material fact regarding Defendant Kinney's retaliatory motivation for writing the threatening behavior misconduct report. Accordingly, his First Amendment retaliation claims fails at the third step.

## Conclusion

The Court will grant the motion of Defendants DeBoer, Moore, Mitchell, and Kinney to strike Plaintiff's surreply brief. (ECF No. 71.) Based upon the evidence submitted by the parties, Defendants DeBoer, Moore, Mitchell, and Kinney have shown that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law. Accordingly, the Court will grant Defendants' motion for summary judgment. (ECF No. 59.)

An order consistent with this opinion will be entered.

Dated: September 25, 2026

/s/ Paul L. Maloney
Paul L. Maloney
United States District Judge